Judge Mills
delivered the Opinion of the Court.
John, George, William and Thomas Parmer filed their bill in equity against Augustine C. Respass, alleging that a patent lor 1000 acres of *563 land had issued toTohn Melton, to the one half of which Haggin was entitled for location; that Elijah Melton and Benjamin Berry, as attornies in fact for John Melton, had conveyed the said tract entirely to said. John Haggin, who conveyed 500 acres thereof to Elijah Melton, and the remaining 500 acres to the-complainants. That Elijah Melton conveyed the 500 acres so conveyed to him- by Haggin, to Thomas Respass, who’ conveyed the same to the defendant, á. C. Respass, except a small portion previously conveyed by him to Isham Talbott. That in making the division line between the shares of Elijah Melton and the complainants, no line was actually made, or corners marked, but that line was ideal and done by protraction only, each deed designing to convey 500 acres, or-rather a full moiety of the tract, and calling for each others corners, and for such distances along the original line of the survey, as was supposed sufficient to give the half to each, before the division corner was called for; but that by running these distances of each deed, it was afterwards ascertained that they would not'meet in a-common division line, but left a surplus of about 20 poles in breadth between them, of which they, the complainants, claim their proportionate share, and which the defendant, A. C. Respass, would not allow them to occupy, but bad enclosed by fencing on their side, more than his share, and that, the division line is never yet settled, which they pray may he done by the decree of the chancellor, and that their proportion of the surplus, according to the. length of their side lines, may be assigned to them,
Advtrsary claims purchased and prayer for them to be partitioned according to agreements.
They further allege, that finding that-an-elder ■> a-tent for about 50Ü acres or. less, covered a portion of the said 1000 acre tract, in the name of. Melton, and was nearly all within it, and that, said smaller patent in the name of Gatliff covered a part of each division of the tract of 1000 acres; they, the complainants, together with said Thomas Respass, purchased the patent of Gatliff, and received a joint conveyance therefor, and that said Thomas Respass had conveyed his undivided moiety thereof to the defendant, A. C. Respass. That each intended to divide and hold the said patent of Gatliff, by the-. *564 division line of the 1000 acre tract, so far as they interfered with each other, and that the part of Gatliff which lay without Melton, had never yet been divided in any manner, nor had there been mutual releases in severalty, of that part which did interfere, and that the defendant refused to divide. They pray a surrender of the title acquired from Gatliff, to be fixed by the true division line of the 1000 acres, so far as the interference extended, and that tiie part which did not interfere, might be divided.
PomuiTor to till sustained j and bill <lisjinissed.
Grounds of the docislon a«-íúnst the Hull.
Will equity ontertnin jurisdiction for Ibo solo purpose of iixing tbo true position of a disputed division lino |jr pthor bofindnry.
feqmty has concurrent juiisdiclion '\ilh tbo courts of law to compel partition.
*564 The defendant demurred to this bill, and the court sustained the demurrer, and dismissed the bill with costs, and to reverse that decree this appeal is prosecuted.
It is evident, from the foregoing statement, that the complainants have right, and .that for a violation thereof, of which they complain, they are entitled to some relief in a court of justice. The only ground, therefore, on which the court below could have dismissed the bill, must have been the supposition that the complainants had a full and adequate remedy at law, and consequently ought not to have sued in a court of equity.
If, as the complainants seem to suppose, the com veyance of Melton’s grant has regularly passed the title from the patentee to them and the defendant, and their conveyances, by a fair construction, intend to unite in a common division line, and to leave no space between the two, it is conceded that the construction of them would be the same at law as in equity, and that of course legal remedies might lie used for a disturbance of the dividing line, so far as tbe patent of Melton is concerned, and that controversy would narrow itself down to the question where the line of partition actually existed, and whether chancery would entertain jurisdiction for the solo purpose of fixing the true position of a disputed boundary, we need not now determine.
For the interposition of Gatliff’s patent, acquired by the litigants’jointly, and not yet divided, render the application to a court of equity indubitably proper. As to that claim, it being the elder grant, the *565 controversy becomes a question of partition; and although partition can be enforced at law, yet a court of equity has entertained a concurrent jurisdiction, to compel partition to be made.
Held on the case apparent by the exhibits made in the bill, that tho complainants came properly into equity to complete their legal title to part, and forpaiff tion.
How the part of Gatliff’s patent, which lies without the grant of Melton is to be divided, and where the division line or lines are to be fixed, is entirely open to the jurisdiction of the chancellor, and is a proper subject for his investigation. So also is the part of G-atliff within Melton’s grant; and as the bill alleges that the interference was, by the understanding of the parties, to be divided by the division line of Melton’s grant, where that division line is, becomes a proper subject of inquiry, and it was, therefore, properly brought into question.
Thus far we have treated the title derived from 'Melton as completely legal, as the bill has treated it. But the deeds are made part of the bill, and are on file, and on inspection we conceive that the legal estate has not passed from John Melton, and as the parties hold at best, but an equity under him, and there is a considerable portion of the land not covered by Gatliff’s patent, a partition of which is claimed, it was proper to go into equity to settle the whole question, to complete the legal estate, and. divide the territory. To do this, John Melton, Elijah Melton and Haggin become necessary parties, as from and through them the legal estate is to pass, and they must be necessary and proper parties, therefore, to settle the question, whether a common division line is to be made, leaving no land between, or whether there is a strip still unsold to the present litigants; a question which we suppose it premature to decide, oii a demurrer alone, without the proper parties being before the court. If, therefore, there had been no question made in the bill, relative to Gatliff’s patent, and the court below had sustained the demurrer for the want of proper parties merely, we might not he disposed to disturb the decree. But as the bill properly presents the division of Gatliff’s patent, without further parties, and the dis-mission is absolute, the decree must be reversed, and the complainants be allowed, if <hey see proper. *566 to bring the proper parties before the court to litigate the question as to Melton’s grant.
Weed of convey anoe by B. lierry and E. Melton, attorneys ’in fact of John Melton,
We have said that no legal title has passed from John Melton, and it is, therefore, proper to point out the defects which appear on the title derived from him.
The conveyance of the whole tract shewn as the conveyance from him, purports to be an indenture made “between Benjamin Berry and Elijah Melton, attorneys in fact fen' John Melton, of the one part, and John Haggin, of the other part,” and “witnesseth that the said Benjamin Berry and Elijah Melton, attorneys in fact for John Melton, for and in consideration of the sum of five shillings, current money of Kentucky, to them in hand paid, the receipt whereof they do hereby acknowledge, and forever acquit and discharge the said John Haggin, his heirs, executors and administrators, have granted,, bargained, sold, aliened and confirmed, and by these presents do grant, bargain, sell, alien and confirm unto the said John Haggin” &c. proceeding with the description and closing it thus, “together with all improvements, water courses and appurtenances, and all the estate, right, title, interest, property, claim and demand of him the said John Melton, of, in. and to the same.” In the warranty it stipulates, as follows: “and tho said Benjamin Berry and Elijah Melton, for the said John Melton, his heirs, executors and administrators, do covenant, promise and agree to and with the said John Haggin, that the premises before mentioned, now are, and forever hereafter shall remain free of and from all former and other gifts, grants,.bargains, sales, dowers, right and title of dower, judgments, executions, titles, troubles, charges or incumbrances whatsoever, done, or suffered to-be done, by him the said John Melton; and the said Benjamin Berry and Elijah Melton, for the said John Melton and his heirs, all and singular the premises hereby bargained and-sold unto the said John Haggin, against him the said John Melton and his heirs, and all and every other person or persons whai soever, claiming by,. Ihrough or under him the said John Melton, do and will warrant and forever defend by these presents.”
Deed held to bo the act and conveyance, not of' John Melton, the alleged principal, but of B. Berry and E. Melton, styling themselves his attorneys.
Might not the intent of such a conveyance be shewn and the defect cured in equity.
An act done under .powbr of attorney must be dono in the name of the principal who gives the power, and not in the attorney ’s name,.
It is closed by these expressions:
“In witness whereof, the said Benjamin Berry and Elijah Melton have hereunto set their hands and seals, the day and year first above written.” It is then signed and sealed by both; and after their individual seals, are written these words: “attor” in fact for John Melton.”
It is also acknowledged by the said Benjamin Berry and Elijah Melton, “to be their act and deed,” before two justices of the peace.
It is evident from this account of it, that this deed is not the act and deed of John Melton, but that of Berry and E. Melton. They, if they were his attorneys in fact, did not convey in his name, or bind him to warranty, or to affix his seal or signature, and acknowledge the act as his. But instead there-r of, they have made their own conveyance, and personally bound themselves for his title, and have attempted to pass it, and naming themselves as attornies in fact, on the face of the deed, cannot be considered more than a description of persons, in a court of law.
Whether this may or may not be hereafter found out to be a mistaken and defective attempt to execute the authority delegated to them by John Melton, and the defects thereof be supplied in a court of equity, is a question not proper for our determination, from the face of the conveyance, and may properly arise, when the caséis shaped so as (o present the question; until this is done it will be improper for the chancellor to enter into a partition of Meltpn’s claim, between the present litigants.
We are aware of the defective and unskilful manner in which agents often execute their authority, and that a strict construction of their acts as to the form or mode of their execution, might shake many titles not heretofore supposed to he defective; and in such cases it would be the safest course to follow the intention of .the act as the rule of construction; i «i res magis valeat quam pereat. But the question arising on this deed is not now left open for the establishment of a new rule, and the law will be *568 found to he well settled. “With regard to the form to he observed in the execution of authority” says Paley on agency, page 152, “it is an established rule that an act done under the power of attorney must be done in the name of the person who gives the power, and not in the attorney’s name.
Releases and other deeds by attorneys, how to he constructed and executed.
Diversity between the case of powers to do single acts, such as the surrender of copy-hold, and the like, and to execute deeds of conveyance.
It was resolved in Combe’s casé, 2 Co. 76 , 77, that when one has authority as attorney to do any act he ought to do it in his name who gives the authority; for he appoints the attorney to he in his place, and to represent his person, and therefore the attorney cannot do it in his own name, nor as his proper act, but in the name, and as the act of him who gives the authority; and this maxim is recognized in many subsequent instances, 1 Str. 705. And in a prior case it was decided, that where one had a power of attorney to release a debt, the release being in his own name was void. So the execution and delivery of a deed must be in the name of the principal, and if it be the execution of the agent only, it is void as to the principal.”
The same author proceeds to notice some exceptions to the rule, such as powers to do single acts, such as the surrender of copyholds or the like, and shows that they may he done by the agent, if he shows that the intention was to act for the principal, and that it is immaterial whether the evidence of such acts reads, that the agent did it for theprioipal, or the principal by the agent. But he shows there is a difference between such cases, and the form of a contract, and thus concludes:
“But though in these cases of mere ceremonial acts, it is indifferent in what order the names stand, whether the principal by the attorney, or the attorney for the principal, yet in the form of a contract, made by attorney the wording is material. Where an interest passes by the instrument, as in an indenture of lease, it must in terms, be ' conveyed by the principal, in whom alone the interest is; for the power of attorney as such, vests no interest in the representative, consequently none can pass from him; and therefore, if a lease were made in the name of the attorney, though it were added also, by virtue of a letter oj at- *569 Homey; or by CA. B. as'attorney for C. D.’ it would be a void lease, Bac. Abr. title Leases, letter I, sec. 10, A covenant for the payment, of rent, made tween the covenantor, on one part, and the plaintiff or attorney for T. P. on the. other, in which the plaintiff for, and in the name, and as attorney for T. F. deceased &c. is void, for being void so as to pass no interest in the land, it is also void, as to the reservation of rent.” Frontin vs. Small, 2 Ld. Raym. 1418, 1, Str. 705.
Grounds for **oVbetweeu ceremonial acts perform-a“na*’ conveyances by deed.
Powers, prop-“h by ínstruments, “along no ttapower^0 but it is otherwise of the the bare au^ thority of an. attorney, -
. Thus the law appears to have been settled by a series of decisions, and modern cases are not found mitigating the ride. Indeed such cases cannot be expected. 5’or the’title being in the principal, it cannot pass from him without Ms deed and his seal. .His signature and seal, can be fixed by the agent, for him; but the agent cannot, by affixing his own seal, or making his deed or warranty, pass a title which is not in him.
The reason for the distinction between ceremonial acts, such as surrenders of copyholds or the like, and conveying by deed, is assigned in the books, and is not without its weight, in. the former case, the title passes by th.e mere ceremonial act, in the latter, by the deed itself; hence the deed of the principal is indispensable.
We have, on this point, been able to discover no conflicting decisions, which might warrant our adopting a different rule. We are awai’e that in many cases found in the books, powers have been held to he executed, when in the instrument there has been no reference to, or mention of the power; and many such cases are referred to in IV Com. Dig. 412, tifie Poiar, letter C. But this is in the case of powers properly so called, reserved or granted, by deeds, wills, &c. united with -an interest. But in the case of a hare authority, created by simple letter of attorney, the rule is laid down by the same author otherwise, and he in all things, concurs with the rule adopted in the cases already cited, as will be seen by consulting him in vol. 1, page 4.58; title, Attorney, G. 7.
Mantl ate for the demurrer to the bill to be overruled and time givvn for answer.
•£>issentofCh. J. Bibb.
The decree of the court below must be reversed with costs, and the cause be remanded with directions to overrule the demurrer, and direct an answer in a reasonable time to be fixed by the court; and to permit the complainants to proceed with their bill as to Gatliff’s patent; arid also as to the partition of Melton’s grant, provided they shall, by an amend? ment bring the proper parties before the court for that purpose.